IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JERRY W. BAKER,

              Plaintiff,                    No. 2:10-cv-1208 GEB KJN P

    vs.

C/O SMITH, et al.,                    ORDER AND

              Defendants.        FINDINGS AND RECOMMENDATIONS

_____/

I.  Introduction

Plaintiff is a state prisoner proceeding without counsel.  On October 12, 2011, defendants filed a motion for summary judgment.  Plaintiff filed an unverified opposition on October 19, 2011, and defendants filed a reply on October 24, 2011.  As set forth below, this court recommends that defendants' motion for summary judgment be granted.

II.  Plaintiff's Amended Complaint

On July 28, 2010, plaintiff filed a verified amended complaint against eleven defendants.  Plaintiff's statement of the claim consists of two paragraphs alleging:

> On 3-20-10 I was assaulted by Officer Smith . . . , C/O Clemente, C/O Kamman, C/O Prior, and C/O Prowell in the Solano County Jail.  I was then placed in "ad seg" by order of Sgt. Dolan and Lt. Marsh.  When I was moved C/O Hall and Sgt. Dolan lost or destroyed all of my personal property as retaliation for the alleged battery on a C/O I was charged with.

1

1  C/O Wailes found [plaintiff] guilty for incident report #10000403 by lying
2  and saying I admitted to fighting with the officer, and my phone visiting and commissary privileges were taken for 10 days.

3  I filed a grievance on C/O Wailes' misconduct and Sgt. Cameron
4  "covered up" Wailes' misconduct by going even further with embellishing my part in the incident and saying I was found guilty
5  due to I was throwing punches at Smith and that I put my foot in the door.  Again this reprisal was all retaliation for my use of the
6  grievance system and alleged C/O battery charges.  About a week before I was assaulted by C/O Smith I filed a grievance against him
7  for sexual harassment/misconduct and C/O Smith, Sgt. Dolan, Sgt. Cameron, and Sgt. Cullison, and Lt. Marsh all "covered up" that
8  grievance until I brought it to the attention of Internal Affairs.  All defendants are Solano County Jail employees . . . .  It should also
9  be noted [that] Sgt. Dolan violated my right to call my attorney or any 3 calls, per Penal Code Section 851.5 (I believe?), within 3 hours of my arrest.

10

11  (Dkt. No. 16 at 3-4.)  Appended to the amended complaint are copies of the felony complaint

12  alleging plaintiff committed battery upon defendant Smith on March 20, 2010; the crime report

13  supporting the felony complaint; and incident reports filed in connection with the March 20,

14  2010 incident.

15  III.  Motion for Summary Judgment

16      A.  Legal Standard for Summary Judgment

17      Summary judgment is appropriate when it is demonstrated that the standard set

18  forth in Federal Rule of Civil Procedure 56(c) is met.  "The judgment sought should be rendered

19  if . . . there is no genuine issue as to any material fact, and that the movant is entitled to judgment

20  as a matter of law."  Fed. R. Civ. P. 56(c).

21      Under summary judgment practice, the moving party
       always bears the initial responsibility of informing the district court
22     of the basis for its motion, and identifying those portions of "the
       pleadings, depositions, answers to interrogatories, and admissions
23     on file, together with the affidavits, if any," which it believes
       demonstrate the absence of a genuine issue of material fact.

24

25  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the

26  burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made

2

1  in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on

2  file.'" Id., citing Fed. R. Civ. P. 56(c).  Indeed, summary judgment should be entered, after

3  adequate time for discovery and upon motion, against a party who fails to make a showing

4  sufficient to establish the existence of an element essential to that party's case, and on which that

5  party will bear the burden of proof at trial. Id. at 322.  "[A] complete failure of proof concerning

6  an essential element of the nonmoving party's case necessarily renders all other facts

7  immaterial." Id. at 323.  In such a circumstance, summary judgment should be granted, "so long

8  as whatever is before the district court demonstrates that the standard for entry of summary

9  judgment, as set forth in Rule 56(c), is satisfied." Id.

10         If the moving party meets its initial responsibility, the burden then shifts to the

11  opposing party to establish that a genuine issue as to any material fact actually exists. See

12  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

13  establish the existence of such a factual dispute, the opposing party may not rely upon the

14  allegations or denials of its pleadings, but is required to tender evidence of specific facts in the

15  form of affidavits, and/or admissible discovery material in support of its contention that the

16  dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

17  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

18  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

19  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

20  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

21  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

22  1436 (9th Cir. 1987).

23         In the endeavor to establish the existence of a factual dispute, the opposing party

24  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

25  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

26  versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary

3

1  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

2  genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

3  committee's note on 1963 amendments).

4          In resolving a summary judgment motion, the court examines the pleadings,

5  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

6  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

7  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

8  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

9  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

10  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

11  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

12  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

13  show that there is some metaphysical doubt as to the material facts . . .  Where the record taken

14  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

15  'genuine issue for trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

16          By order filed September 20, 2010, the court advised plaintiff of the requirements

17  for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.

18  (Dkt. No. 22); see Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v.

19  Eikenberry, 849 F.2d 409 (9th Cir. 1988).

20          B.  Abandoned Issues

21          On October 19, 2011, plaintiff filed a document styled, "Response to Defendants'

22  Request for Summary Judgment," which is not signed under penalty of perjury.  (Dkt. No. 74.)

23  Plaintiff states that "the defendants must be held accountable for their actions.  I was assaulted by

24  jail employees. . . ."  (Dkt. No. 74.)  Plaintiff claimed "Officer Smith lied in his most recent

25  declaration" where he stated that plaintiff "punched him in the face," because in the incident

26  ////

4

1   report, Officer Smith stated plaintiff "threw a right cross which he blocked and he gained control

2   of [plaintiff's] upper torso." (Id.) "Excessive force was used." (Id.)

3         "'It is a general rule that a party cannot revisit theories that it raises but abandons

4   at summary judgment.'" Davis v. City of Las Vegas, 478 F.3d 1048, 1058 (9th Cir. 2007)

5   (quoting BankAmerica Pension Plan v. McMath, 206 F.3d 821, 826 (9th Cir. 2000)). See also

6   Ramirez v. City of Buena Park, 560 F.3d 1012, 1026 (9th Cir. 2009).[1] "'A party abandons an

7   issue when it has a full and fair opportunity to ventilate its views with respect to an issue and

8   instead chooses a position that removes the issue from the case.'" Id. (quoting McMath, 206

9   F.3d at 826).

10        Moreover, when a pro se litigant presents no evidence to support his allegations, a

11   district court ruling on a summary judgment motion does not have a duty to search for evidence

12   that would create a factual dispute because "[a] district court lacks the power to act as a party's

13   lawyer, even for pro se litigants." Bias v. Moynihan, 508 F.3d 1212, 1219 (9th Cir. 2007)

14   (rejecting a pro se plaintiff's contention that in ruling on the defendants' summary judgment

15   motion, the district court should have searched the record for evidence supporting her claims, and

16   holding that by failing to present any evidence to support her opposition, the plaintiff failed to

17   show the existence of any genuine factual dispute); see also Fair Housing Council of Riverside

18   County, Inc. v. Riverside Two, 249 F.3d 1132, 1136-37 (9th Cir. 2001) (citations omitted) (a

19   court "has no obligation to search the entire case file for evidence that establishes a genuine issue

20   of fact when the nonmovant presents inadequate opposition to a motion for summary judgment").

21   "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the

22

23        [1]   In Ramirez, the Ninth Circuit affirmed the district court's grant of summary judgment
24   to the defendants on Ramirez' state law claims, stating  "because Ramirez abandoned his state
     law claims by not addressing them in either his Motion for Partial Summary Judgment or his
25   Opposition to Defendants' Motion for Summary Judgment, he waived his challenge to the
     district court's order." Id.  See also Scott v. Moore, 2010 WL 1404411 (E.D. Cal. April 6, 2010)
26   (plaintiff's failure to address deliberate indifference claim in opposition to motion for summary
     judgment warranted entry of summary judgment on that claim).

1  mere allegations or denials of his pleading, but . . . must set forth specific facts showing that

2  there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 248 (citation omitted).

3        In addition, Local Rule 260(b) provides, in pertinent part:

4          Any party opposing a motion for summary judgment or summary
           adjudication <u>shall</u> reproduce the itemized facts in the Statement of

5          Undisputed Facts and admit those facts that are undisputed and
           deny those that are disputed, including with each denial a citation

6          to the particular portions of any pleading, affidavit, deposition,
           interrogatory answer, admission, or other document relied upon in

7          support of that denial.

8  <u>Id.</u> (emphasis added).  Finally, the court notes that plaintiff filed a similarly unverified and

9  inadequate opposition in <u>Baker v. Solano County</u>, 2:10-cv-1811 KJM KJN P, in which plaintiff

10  merely stated, "I do oppose the defendants' motion for summary judgment and I want a trial

11  based on the complaint."  <u>Id.</u>, Dkt. No. 55.

12        Here, defendants' motion is supported by a separate statement of undisputed facts,

13  affidavits, deposition testimony, and duly authenticated documentary evidence.

14        By contrast, plaintiff did not file his own separate statement of undisputed facts.

15  Plaintiff did not admit or deny the facts set forth by defendant as undisputed, as required by Local

16  Rule 260(b).  Plaintiff did not sign his opposition under penalty of perjury,[2] or submit any

17  evidence to support any of his claims.  Plaintiff may not rely upon the mere allegations or denials

18  of his pleadings, but is required to tender evidence of specific facts in the form of affidavits,

19  and/or admissible discovery material, in support of his contention that a material dispute of fact

20  exists.  Fed. R. Civ. P. 56(c); <u>Matsushita</u>, 475 U.S. at 586 n.11; <u>Strong v. France</u>, 474 F.2d 747,

21

22      [2]  This is not the first time plaintiff failed to verify a document or to follow a court order.
23  As defendants point out, none of plaintiff's belated discovery responses were signed by plaintiff
   under penalty of perjury.  (Dkt. No. 62.)  In addition, plaintiff previously failed to comply with
   this court's March 14, 2011 order partially granting defendants' motion to compel discovery,
24  after defendants received no responses to their discovery requests, and requiring plaintiff to
   provide discovery responses on or before April 4, 2011.  (Dkt. No. 41.)  Even if plaintiff had
25  signed the discovery responses under penalty of perjury, his responses were mostly inadequate.
   (Dkt. No. 62 at 3-111.)  Indeed, in response to many of the discovery requests plaintiff simply
26  responded by inserting a question mark ("?"), or writing "unclear?".  (<u>Id.</u>)

1  749 (9th Cir. 1973) (plaintiff may not rest upon the mere allegations of the complaint, but must

2  "set forth specific facts showing that there is a genuine issue for trial.")

3          In his unverified opposition, plaintiff states generally that he "was assaulted by

4  jail employees."  However, he addresses only one factual allegation as to only defendant Smith,

5  claiming defendant Smith lied, and concludes that defendant Smith used excessive force, without

6  providing any factual support for such a conclusion.  Although the verified amended complaint

7  generally alleges claims of "assault" by defendants Clemente, Kamman, Prowell and Prior,

8  plaintiff does not specifically address these claims in his opposition.[3]  Moreover, the verified

9  amended complaint sets forth no factual allegations sufficient to demonstrate all of the elements

10 for an excessive force claim as to each of these defendants as required under White v. Roper, 901

11 F.2d 1501, 1507 (9th Cir. 1990).  Thus, even if plaintiff's excessive force claims as to defendants

12 Clemente, Kamman, Prowell and Prior were not abandoned, plaintiff's verified amended

13 complaint is insufficient to refute the evidence proffered by these defendants demonstrating that

14 they did not use excessive force or used no force at all.

15         In addition, the verified amended complaint raises multiple claims unrelated to the

16 claims of excessive force, but plaintiff does not address or mention these unrelated claims in his

17 opposition, despite defendants' briefing on these claims.  Plaintiff provided no evidence or

18 further factual support for these unrelated claims.  Other than plaintiff's claim that defendant

19 Smith allegedly lied concerning one fact underlying plaintiff's excessive force claim against

20 defendant Smith, plaintiff's one page opposition is conclusory and devoid of specific facts or

21 evidence supporting all of the claims raised in the verified amended complaint.

22  _____

23      [3] Defendants adduced evidence that defendants Kamman and Clemente responded to the
    altercation between plaintiff and defendant Smith, and defendants Prowell and Prior, along with
24  Officer Ramirez, escorted plaintiff to administrative segregation after order was restored.
    Because there were two separate incidents of alleged excessive force at issue involving multiple
25  defendants, plaintiff's use of the plural term "jail employees" is insufficient to represent
    opposition to defendants' motion for summary judgment as to defendants not named in this
26  opposition.

1    Finally, as noted above, on September 20, 2010, plaintiff was advised of the

2    requirements for filing an opposition to a motion for summary judgment, and plaintiff was

3    provided a copy of the Local Rules of Court.  (Dkt. No. 22 at 4-5.)

4    Accordingly, the court finds that plaintiff has abandoned all of his claims save for

5    his excessive force claim as to defendant Smith.  Plaintiff did not file a cross motion for

6    summary judgment; therefore, by failing to address these claims in his opposition, plaintiff took a

7    position that removed the issues from the case by conceding that defendants are entitled to

8    summary judgment on these claims.  Thus, the court recommends that defendants be granted

9    summary judgment on these abandoned claims.  Fed. R. Civ. P. 56(e)(4).  The court turns now to

10   defendants' motion for summary judgment as to defendant Smith.

11   C.  Undisputed Facts[4]

12   For purposes of summary judgment as to defendant Smith, the court finds that the

13   following facts are either not disputed, or, following the court's review of the evidence

14   submitted, are deemed undisputed:

15   1.  From March 6, 2010, until September 22, 2010, plaintiff was a pretrial

16   detainee housed in the Solano County Jail.

17   2.  At all times relevant to this action, defendant Smith was a custodial staff

18   member at the Solano County Jail.

19   3.  The Solano County Sheriff's Department established written rules and

20   disciplinary penalties to guide inmate conduct, pursuant to the California Code of Regulations,

21   Title 15 § 1080.  The rules are applicable to all Solano County detention facilities, including the

22   Solano County Jail in Fairfield, California.  Each inmate is issued a copy of the rules upon

23   booking.  Violations of the rules may result in minor, major, or criminal penalties, depending

24   _____

25       [4] Defendants' statement of undisputed facts is accepted except where brought into
     dispute by plaintiff's verified amended complaint.  Jones v. Blanas, 393 F.3d 918, 923 (9th Cir.
26   2004) (verified complaint may be used as an opposing affidavit if it is based on pleader's
     personal knowledge of specific facts which are admissible in evidence).

upon the type and severity of the violation.  Altering or destroying county property can result in a major violation and/or criminal charges.  Failing to obey a lawful order from jail staff, including an order to lock down, is a major violation.  Fighting is prohibited, and can result in a major violation and/or criminal charges.

4.  On March 19, 2010, defendant Smith confiscated a ripped county-issued towel from plaintiff's cell.

5.  Defendant Smith warned plaintiff that altering or destroying county property was against the rules, and informed plaintiff that he would lose his recreation privileges on March 20, 2010.

6.  Officer Herndon was aware of plaintiff's loss of privileges when he unlocked the cell doors in plaintiff's unit on March 20, 2010, and reminded plaintiff that he was on lock down and could not come out of his cell.  Plaintiff replied by stating, "Oh hell no, I'm comin' out," and proceeded down the stairs to the day room.

7.  Officer Herndon notified defendant Smith, who ordered plaintiff to lock down, which means go back to one's cell.

8.  Plaintiff ignored the order and began arguing with defendant Smith.

9.  Defendant Smith ordered plaintiff to lock down a second time.

10.  Plaintiff stated, "you're gonna have to lock me down," then ran back upstairs, removed his shirt, and stood in front of his cell in a fighting stance.

11.  When defendant Smith approached plaintiff and attempted to close the cell door, plaintiff placed his foot in the door.

12.  Defendant Smith pushed plaintiff in the chest with two open palms in an attempt to physically move plaintiff into the cell and close the cell door without causing plaintiff harm.

////

////

9

1   13.   Defendant Smith contends plaintiff punched defendant Smith in the face with

2   a closed right fist.   Plaintiff testified in his deposition that he did not punch defendant Smith or

3   any other officer.

4   14.   Officer Herndon radioed for emergency assistance.

5   15.   Defendant Smith declares that he defended himself by using open-handed

6   palm strikes, and attempted to take control of plaintiff by wrapping his arms around plaintiff's

7   upper torso, but plaintiff continued trying to punch defendant Smith.   At deposition, plaintiff

8   testified that defendant Smith punched plaintiff in the face three or four times.   (Pl.'s Depo. at

9   28.)

10   16.   Defendants Kamman and Clemente arrived in response to Officer Herndon's

11   call for assistance.

12   17.   Plaintiff refused multiple orders to stop fighting and get down on the ground,

13   so defendant Kamman struck plaintiff twice on the left shin with a baton.

14   18.   Defendant Clemente took hold of plaintiff's right wrist and placed him in an

15   arm bar, which is a technique used by officers to control and bring an inmate to the ground with

16   the least amount of force and injury to the officer and the inmate, using physics and momentum.

17   19.   Although plaintiff continued to resist, defendants Kamman and Clemente

18   were eventually able to get plaintiff to the ground and restrain him.

19   20.   With regard to plaintiff's injuries, Reporting Deputy A. Miller observed:

20   swelling and red marks on [plaintiff's] left cheek near his eye, right
    cheek near his right eye and near his right ear.   [Plaintiff's] hands

21   were also red and swollen.   [Plaintiff] also stated he was injured on
    his left leg.   [Plaintiff] showed me his left leg and [Miller]

22   observed two red marks approximately twelve inches long by one-
    half inch wide.

23

24   (Dkt. No. 16 at 13.)   In deposition, when asked what injuries he incurred, plaintiff responded:

25   "Both my eyes were swollen.   I believe my back and my leg were swollen, red marks."   (Pl.'s

26   Depo. at 52.)

1    21.  Defendant Smith suffered facial injuries, including swelling and redness

2  below his right eye, and redness on his left cheek.  (Dkt. No. 71-6 at ¶ 5.)

3    22.  The incident reports reflect that the incident took place in a brief period of

4  time; the exchange between plaintiff and defendant Smith began at 8:25 a.m. on March 20, 2010

5  (dkt. no. 16 at 11), and when Officer Herndon responded at approximately 8:30 a.m., restraints

6  had been applied and plaintiff was secured (dkt. no. 16 at 17).

7    D.  Alleged Excessive Force

8    Defendants Smith, Clemente, and Kamman provided declarations stating that they

9  did not subject plaintiff to excessive force on March 20, 2010, that plaintiff's refusal to follow

10  Smith's direct orders and other officers' verbal orders demonstrated the need for the use of force,

11  that only reasonable and necessary force needed to overcome plaintiff's resistance was used, and

12  that force was used to gain compliance with Smith's lawful order, and was used in a good faith

13  effort to maintain and restore discipline.  Defendants Smith, Clemente, and Kamman declare that

14  the relationship between the need for force and the amount of force used was reasonable given

15  that plaintiff was combative and refused to obey verbal orders.  Defendants argue that the minor

16  injuries sustained by plaintiff support their position that excessive force was not used.

17    As noted above, plaintiff's unverified opposition states that "Officer Smith lied in

18  his most recent declaration" where he stated that plaintiff "punched him in the face," because in

19  the incident report, Officer Smith stated plaintiff "threw a right cross which he blocked and he

20  gained control of [plaintiff's] upper torso" and "[e]xcessive force was used."  (Dkt. No. 74.)

21    In reply, defendants argue that plaintiff's reiteration of his contention that he was

22  "assaulted" is insufficient to demonstrate that the force used was excessive.  Defendants dispute

23  plaintiff's unverified contention that defendant Smith lied because the evidence submitted

24  demonstrates plaintiff threw multiple punches.

25   ////

26  ////

11

1          ii.  Legal Standards

2          A pretrial detainee is not protected by the Eighth Amendment's proscription

3  against cruel and unusual punishment as he has not been convicted of a crime.  See Bell v.

4  Wolfish, 441 U.S. 520, 535 & n.16 (1979); Ingraham v. Wright, 430 U.S. 651, 671-72 n.40

5  (1977).  The Due Process Clause protects pretrial detainees from the use of excessive force.  Bell,

6  441 U.S. at 535-36; see Redman v. County of San Diego, 942 F.2d 1435, 1440 (9th Cir. 1991)

7  (en banc) (quoting Graham v. Connor, 490 U.S. 386, 395 n.10 (1989)).  However, the protections

8  of the Due Process Clause are at least as great as those of the Eighth Amendment.  See City of

9  Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244 (1983); Gary H. v. Hegstrom, 831 F.2d

10  1430, 1432 (9th Cir. 1987).  To determine whether the application of force was excessive, courts

11  inquire into:  "(1) the need for the application of force, (2) the relationship between the need and

12  amount of force that was used, (3) the extent of the injury inflicted, and (4) whether force was

13  applied in a good faith effort to maintain and restore discipline."  White, 901 F.2d at 1507.

14          iii.  Analysis

15          Plaintiff's verified statement in the amended complaint that defendant Smith

16  "assaulted"[5] plaintiff, without more, is insufficient to demonstrate that the force used was

17  excessive.  Plaintiff does not articulate what actions defendant Smith took, or address any of the

18  other elements required under White.  Id.  As noted above, plaintiff's opposition is not signed

19  under penalty of perjury.  Plaintiff's opposition, therefore, cannot be considered admissible

20  evidence.  See Jones, 393 F.3d at 923 (court must consider as evidence in pro se plaintiff's

21  opposition to motion for summary judgment, all of plaintiff's contentions that are based on

22  personal knowledge, attested as true and correct under penalty of perjury, and otherwise

23

24          [5]  "Assault" is defined as the "threat or use of force on another that causes that person to
have a reasonable apprehension of imminent harmful or offensive contact; the act of putting
25  another person in reasonable fear or apprehension of an immediate battery by means of an act
amounting to an attempt or threat to commit a battery."  Black's Law Dictionary 109 (7th ed.
26  1999).

1    admissible).  In addition, plaintiff failed to identify any evidence, admissible or not, in the

2    exhibits to his verified amended complaint, that supports his allegation that defendant Smith used

3    excessive force.  Indeed, the exhibits provided by plaintiff with his amended complaint support

4    defendants' version of the events of March 20, 2010.

5            On March 21, 2010, a hearing was held on the charges of battery against

6    defendant Smith by plaintiff.  (Dkt. No. 72-6 at 45.)  During the disciplinary hearing, plaintiff

7    pled not guilty to the charges, but recounted the following occurred:

8                [Plaintiff] began arguing with Officer Smith.  Officer Smith gave
             him a direct order to lock down.  Inmate Baker stated he then
9            walk[ed] up the stairs and Officer Smith followed him.  Inmate
             Baker then stated he stood in the door way of his cell and Officer
10           Smith pushed him back into the cell.

11   (Id.)  In his deposition, plaintiff testified that defendant Smith was trying to take plaintiff's

12   recreation time.  (Pl.'s Depo. at 18.)  Plaintiff testified that he walked down the stairs from his

13   cell and started talking to defendant Smith, who ordered plaintiff to lock down.  (Id.)  Plaintiff

14   stated he returned to his cell, and was standing in front of his cell, and that he and defendant

15   Smith started arguing "about something."  (Pl.'s Depo. at 19.)  Plaintiff testified that he thought

16   defendant Smith "said something disrespectful to [plaintiff], and then [Smith] pushed [plaintiff]

17    . . . and we had an altercation."  (Pl.'s Depo. at 19.)  Plaintiff testified that defendant Smith

18   "used quite a bit of force."  (Pl.'s Depo. at 21.)  Plaintiff stated that he could not "break down for

19   you play-by-play what happened," but he recalled "being punched by officers, and hit with the

20   baton," but could not give counsel the "play-by-play."  (Id.)  Plaintiff denied punching defendant

21   Smith or the other officers.  (Id.)  Plaintiff reiterated that he was "assaulted by officers."  (Pl.'s

22   Depo. at 22.)  Plaintiff testified that he was standing when defendant Clemente hit plaintiff with

23   the baton.  (Pl.'s Depo. at 27.)  Plaintiff also testified that defendant Smith punched plaintiff in

24   the face three or four times.  (Pl.'s Depo. at 28.)  Plaintiff stated that he was aware that defendant

25   Smith also had injuries, but did not know how defendant Smith got those injuries.  (Pl.'s Depo. at

26   ////

28-29.)  Plaintiff conceded it "was an altercation" (id. at 20), and that he was "wrestling" with

defendant Smith when plaintiff was hit with the baton (id. at 42).

In Saucier v. Katz, 533 U.S. 194 (2001), the United States Supreme Court

> mandated a two-step sequence for resolving government officials'
> qualified immunity claims.  First, a court must decide whether the
> facts that a plaintiff has alleged (see Fed. Rules Civ. Proc. 12(b)(6),
> (c) or shown (see Rules 50, 56) make out a violation of a
> constitutional right.  533 U.S. at 201 . . . .  Second, if the plaintiff
> has satisfied this first step, the court must decide whether the right
> at issue was "clearly established" at the time of defendant's alleged
> misconduct.  *Ibid*.  Qualified immunity is applicable unless the
> official's conduct violated a clearly established constitutional right.

Pearson v. Callahan, 555 U.S. 223, 232 (2009) (citing Anderson v. Creighton, 483 U.S. 635, 640

(1987)).

> "For a constitutional right to be clearly established, its contours
> must be sufficiently clear that a reasonable official would
> understand that what he is doing violates that right.  This is not to
> say that an official action is protected by qualified immunity unless
> the very action in question has previously been held unlawful, see
> Mitchell [v. Forsyth, 472 U.S. 511,] 535, n.12 . . .; but it is to say
> that in the light of pre-existing law the unlawfulness must be
> apparent."

Hope v. Pelzer, 536 U.S. 730, 739 (2002) (quoting Anderson, 483 U.S. at 640.)

In Pearson, the United States Supreme Court held that the two step analysis of

Saucier is no longer mandatory.  Instead, "[t]he judges of the district courts and the courts of

appeals should be permitted to exercise their sound discretion in deciding which of the two

prongs of the qualified immunity analysis should be addressed first in light of the circumstances

in the particular case at hand."  Pearson, 555 U.S. at 236.  Thus, courts now have the discretion

to "skip the first step of the Saucier analysis and proceed directly to the qualified immunity

question."  Phillips v. Hust, 588 F.3d 652, 655 (9th Cir. 2009).

Therefore, the only evidence in the record that raises any question about the

evidence tendered by defendants is plaintiff's deposition testimony that claims defendant Smith

punched plaintiff in the face three or four times.  It is undisputed that plaintiff failed to obey

14

1    defendant Smith's verbal order to lock down, and plaintiff's actions in failing to lock down

2    created a need for the use of force.  White, 901 F.2d at 1507.  It is also undisputed that defendant

3    Smith initially pushed plaintiff after plaintiff refused to lock down, and that plaintiff was then "in

4    an altercation" with, and "wrestling" with, defendant Smith, despite plaintiff's deposition

5    testimony that he did not punch any officer.  It is undisputed that Officer Herndon radioed for

6    emergency assistance, and defendants Kamman and Clemente responded, and that defendant

7    Smith also sustained injuries from the altercation.  The injuries sustained by plaintiff and

8    defendant Smith were, however, minor.

9            Even assuming arguendo that this evidence presented by plaintiff might be

10   sufficient to create a triable issue of material fact as to whether or not defendant Smith applied

11   force to plaintiff in a good faith effort to maintain and restore discipline, the court must separate

12   the qualified immunity inquiry from the constitutional inquiry and "look at the situation as a

13   reasonable officer in [the position of any of the defendants] could have perceived it."  Marquez v.

14   Gutierrez, 332 F.3d 689, 693 (9th Cir. 2003).

15           It is undisputed that plaintiff engaged in an argument with defendant Smith and

16   refused to follow defendant Smith's verbal order to lock down.  Moreover, plaintiff presented no

17   evidence to dispute defendants' evidence that he continued to refuse to comply with further

18   verbal orders, resulting in defendants Kamman and Clemente being called to respond to the

19   altercation.  In his deposition, plaintiff testified he was standing when defendant Clemente used

20   the baton, raising an inference that plaintiff was not following orders to get down.  The incident

21   reports suggest that the entire exchange between plaintiff and defendant Smith was brief, perhaps

22   five minutes or less.  Officer Herndon provided a declaration stating that he saw plaintiff

23   "physically fighting with" defendant Smith.  (Dkt. No. 71-7 at ¶ 3.)

24           Therefore, this court finds that reasonable correctional officers in the position that

25   defendant Smith found himself could have believed that the force used to control plaintiff and get

26   him in restraints was applied in a good faith effort to restore discipline and order.  White, 901

15

F.2d at 1507; see also Luchtel v. Hagemann, 623 F.3d 975, 983 n.3 (9th Cir. 2010) ("A

reasonable police officer in the position of the defendants had to act to restrain Luchtel, to protect

her from herself and to protect themselves and others.  The degree of force used was not

excessive in light of her fighting the restraint, and the mere fact of consequent injury is not

enough to establish excessive force."); Marquez, 322 F.3d at 693 ("[W]e believe that a

reasonable officer could believe that shooting one inmate in the leg to stop an assault that could

have seriously injured or killed another inmate was a good faith effort to restore order, and thus

lawful.")  Accordingly, this court finds that defendant Smith is entitled to summary judgment in

his favor with respect to plaintiff's excessive use of force claim on the grounds of qualified

immunity.

IV.  Motion for Copies

        On January 3, 2012, plaintiff filed a motion asking the court to direct defendants

to re-send all documents sent to 943 Fallsgrove Way in Vacaville from September 6, 2011, to the

present, because "the jail is not letting in [plaintiff's] legal mail from [his] previous address."

(Dkt. No. 81.)  Defendants oppose the request, noting that plaintiff submitted no evidence

demonstrating that the Solano County Jail was not letting in plaintiff's legal mail from his prior

address of residence in Vacaville.  Also, defendants claim it is likely that plaintiff left no

forwarding address for mail to be sent to plaintiff in custody because plaintiff was apprehended

and arrested earlier in December.  (Dkt. No. 84 at 1.)

        In addition, the record does not reflect that any of plaintiff's mail was returned,

and it is clear plaintiff received defendants' motion for summary judgment as he filed an

opposition on October 19, 2011, which contained plaintiff's Fallsgrove Way address.  (Dkt. No.

74.)

        Therefore, plaintiff's January 3, 2012 motion (dkt. no. 81) is denied.

////

////

16

V.  Conclusion

Accordingly, IT IS HEREBY ORDERED that plaintiff's January 3, 2012 motion (dkt. no. 81) is denied; and

IT IS HEREBY RECOMMENDED that:

1.  Defendant Smith be granted summary judgment in his favor with respect to plaintiff's excessive use of force claim on the grounds of qualified immunity; and

2.  Defendants' October 12, 2011 motion for summary judgment (dkt. no. 71) on plaintiff's remaining claims be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  June 6, 2012

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

bake1208.msj+